BOLIN, Justice.
Sherri Hurst appeals from a summary judgment in favor of the estate of Brenda M. Ray[1] on Hurst’s negligence claim. We reverse and remand.
Facts and Procedural History .
Hurst and- Ray had been friends and neighbors for approximately 20 years before the incident that is the basis of the underlying action, Hurst and Ray would shop together once or twice a month, sharing rides over the years in order to reduce the expenses of gasoline and wear and tear on their respective vehicles, They would alternate as to whose vehicle they would take on each shopping trip.
On August 22, 2013, Ray telephoned Hurst and asked her to accompany her to a Wal-Mart discount store. Ray was taking Nona Williams, her elderly aunt; to purchase Williams’s medication and other merchandise that day, in preparation for Williams’s move to Ohio. Hurst stated that Ray told her: “I really need you if you can go with me to Wal-Mart and go run some errands.” Hurst testified that Williams was “very old” and that she .walked, “slowly.” According to Hurst, although Williams *217 walked “slowly,” she was able to. walk without assistance. Hurst additionally stated that Ray suffered from congestive .heart failure and a variety of other illnesses but that Ray also was able to walk without assistance. Hurst .testified that her purpose in accompanying Ray to the Wal-Mart store was to “help her with her aunt [by] assisting her in the store [and] ... by standing with [Williams] [and] making sure [Williams] got to her correct destination.” When asked specifically what assistance Ray had requested when she asked Hurst to go to the store with her, Hurst replied: “[S]he just wanted me to stay with [Williams] while she would go park the car or come into the store, whatever she needed.”
Williams testified that Ray asked Hurst to accompany them to the Wal-Mart store because “both-[Ray] and I had limited mobility, and [Ray] wanted [Hurst] to come along in case either of us needed help moving around.”
Ray drove her vehicle to the Wal-Mart store, and Williams and Hurst rode as passengers. When they arrived at the Wal-Mart store, Ray pulled her vehicle along the curb in front of the store to allow Williams to get out of .the vehicle at the entrance. After, Williams got out of the vehicle, Ray asked Hurst to stand with Williams on the curb while she parked the car. Hurst then began to get out of,the vehicle, but, before she had completely exited the vehicle, Ray pulled the vehicle forward, causing Hurst to fall to the ground. Hurst sustained injuries when the back tire of the vehicle ran over her leg.
On August 21, 2015, Hurst sued Ray’s estate (“the estate”), alleging negligence and seeking to recover damages for her injuries. The estate answered the complaint, raising as a defense, among other things, the Alabama Guest Statute, § 32-1-2, Ala. Code 1975. On May 25, 2016, the estate moved for a summary judgment, arguing that Hurst’s negligence claim was barred by the Guest Statute. On June 7, 2016, Hurst filed a cross-motion for a summary judgment or, in the alternative, to deny the estate’s motion for a summary judgment. Following a hearing, the trial court, on June 20, 2016, entered an order granting the estate’,s motion for a. summary judgment and denying Hurst’s cross-motion for a summary judgment. Hurst appeals.
Standard of Review
The standard by which this Court reviews a summary judgment is well settled:
“This Court reviews a summary judgment de novo. Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala. 2004). We seek to determine whether the , movant, has made. a prima facie showing that there exists no genuine issue of material fact:-and has demonstrated that the movant is entitled to a judgment as a matter of law. Turner, supra. In reviewing a summary judgment, this Coqrt, reviews the evidence in the light most .favorable to the nonmov-ant. Turner, supra. Once the .movant makes a prima facie showing that he is entitled to a summary judgment, the burden shifts .to .the nonmovant to produce ‘substantial evidence’ creating a genuine issue of material fact. Ala. Code 1975, § 12—21—12; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). ‘Substantial evidence’ is ‘evidence .of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assurance Co. of Fla., 547 So.2d 870, 871 (Ala. 1989).”
Muller v. Seeds, 919 So.2d 1174, 1176-77 (Ala. 2005).
*218 Discussion
Section 32-1-2, Ala. Code 1975, provides:
“The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner, or person responsible for the operation ■ of the motor vehicle.”
The term “guest” is not defined in the statute; however, this Court has stated:
“ ‘ “The general rule is that if the transportation of a rider confers a benefit only on the person to whom the' ride is given, and no benefits other than such as aré incidental to hospitality, good will or the like, on the person furnishing the transportation, the rider is a guest; but if his carriage tends to promote the mutual interest of both [the rider] and driver for their common benefit, thus creating a joint business relationship between ' the motorist and his rider, or if the rider accompanies the driver at the instance of the driver for the purpose of having the rider render a benefit or service to the driver on a trip that is primarily for the attainment of some objective of the driver, the rider is a ‘passenger for hire’ and not a guest.” ’ ”
Sullivan v. Davis, 263 Ala. 685, 688, 83 So.2d 434, 436-37 (1955)(quoting Wagnon v. Patterson, 260 Ala. 297, 303, 70 So.2d 244, 249 (1954), quoting in turn Hasbrook v. Wingate, 152 Ohio St. 50, 56-57, 87 N.E.2d 87, 91 (1949)). See also Dorman v. Jackson, 623 So.2d 1056, 1057 (Ala. 1993), and Sellers v. Sexton, 576 So.2d 172, 174 (Ala. 1991). Further, this Court has stated: “ Tf the excursion is not purely social, any benefit to the driver of the automobile conferred or anticipated or mutual benefit present or anticipated to the driver and the person carried is sufficient to take the case out of the automobile guest statute.’ ” Harrison v. McCleary, 281 Ala. 87, 90, 199 So.2d 165, 167 (1967)(quoting Blair v. Greene, 247 Ala. 104, 110, 22 So.2d 834, 837 (1945)). This Court has also stated:
“ ‘... In order to keep the person transported from being a gratuitous guest, it is not necessary that he should have paid or agreed to pay directly for his transportation or be a “passenger for hire” in the legal sense of the term; and the payment or compensation which the carrier derives from the undertaking need not consist of cash or its equivalent, but may consist of some other substantial benefit, recompense, or return making it worth while for him to furnish the ride.’ 60 C.J.S., Motor Vehicles, § 399(5)b, p. 1011.
[[Image here]]
“..."[T]he general rule [is] that a mere incidental benefit to the driver is not sufficient to take the rider out of the guest statute. The benefit conferred must in some degree have induced the driver to: extend the offer to the rider. Further, courts have generally held that the benefit must be material and tangible and must flow from the transportation provided....”
Sullivan, 263 Ala. at 688-89, 83 So.2d at 437. Relative to the court’s task in determining whether a rider in a vehicle was a “guest” or a “passenger for hire,” this Court has stated:
“The commereidl and social relationships that can exist between the driver of an automobile and his passenger are almost as numerous and varied as human activity itself. At one extreme we have the ‘hitchhiker’ guest who clearly falls within the purview of the statute. At the *219 other extreme we' have the passenger who pays the driver to be transported to a particular place and who is unquestionably beyond the scope of the statute. Between these two extremes the dividing line may at times become illusory and shadowy. It is sometimes necessary to enter into a detailed examination of the present and former relations between driver and passenger; implied and expressed arrangements made between them as to the conduct of the particular, trip; the purpose of the mission; the benefits accruing to the driver and passenger from the expedition; and any other factors that bring into proper focus the true status of the parties at the time of the accident which give rise to the legal action.”
Sullivan, 263 Ala. at 687, 83 So.2d at 436.
Hurst argues that the trial court erred in entering a summary judgment in favor of the estate because, she says, based upon the facts of this case she was a passenger and not a guest under the Alabama Guest Statute at the time she sustained her injuries. The general rule set forth in Sullivan above, regarding whether a rider in a vehicle is considered a “guest” or a “passenger for hire” for purposes of the Alabama Guest Statute, has three components: (1) if the transportation of a rider confers a benefit only on the rider, and no benefits, other than such as are incidental to hospitality, good will, or the like, on the driver, the rider is a guest; (2) if the transportation tends to promote the mutual interest of both the rider and the driver for their common benefit, thus creating a joint business relationship between the motorist and his or her rider, the rider is a “passenger for hire” and not a “guest”; and (3) if the rider accompanies the driver at the instance of the driver for the purpose of having the rider confer a benefit or service to the driver on a trip the primary objective of which is to benefit the driver, the rider is a “passenger for hire” and -not a “guest.”
As to the first component of the test espoused in Sullivan, supra, the estate argues that any benefit bestowed upon Ray by Hurst’s accompanying Ray to the Wal-Mart store to assist Ray with Williams was incidental to the goodwill shared between Hurst and Ray that arose from their long-standing friendship. Therefore, the estate ■ contends, Hurst was a “guest” and not a “passenger for hire” under the Guest Statute. It is undisputed that Ray and Hurst had enjoyed a friendship of over 20 years and that they had routinely shared rides with each other. However, nothing in the record indicates, nor has the estate demonstrated, that any benefit was conferred on Hurst by her agreeing to accompany Ray to the Wal-Mart store to assist Ray with her elderly aunt. It does not appear from the record that Hurst was to, be compensated for her assistance or that the trip was in any way for Hurst’s benefit. Based on the facts presented here, Hurst did not qualify as a “guest” under the first component of the test set forth in Sullivan.
As to the second component of the test set forth in Sullivan, we again note that the longtime friends had a history of shopping'together, and, in the course of those shopping excursions, they would share rides and alternate on each trip whose vehicle they would take, for the mutually beneficial purpose of reducing the expenses of gasoline and wear and tear on their respective vehicles. However, the facts presented here indicate that this particular trip was not taken in the context of their standing arrangement of sharing rides for each other’s mutual benefit. Rather, Ray asked Hurst to accompany her to the Wal-Mart store to assist Ray with Williams, her elderly aunt. Nothing in *220 the facts presented indicate that Hurst’s accompanying Ray to the Wal-Mart store to assist her with Williams tended to create a joint business relationship between Hurst and Ray because no bénefit was being conferred upon Hurst. Accordingly, the second component of the test set forth in Sullivan is not determinative of Hurst’s status under the Guest Statute.
As for component threé of the test in Sullivan,' Hurst argues that she conferred a material benefit upon Ray by agreeing to Ray’s request to accompany Ray to the Wal-Mart store to assist Ray with her elderly aunt. Therefore, Hurst contends, she was a passenger and not a “guest” for purposes of the Guest Statute. We agree.- The evidence, viewed in a light most favorable to Hurst, indicates the following. Ray suffered from congestive heart failure and a number of other illnesses. Williams, Ray’s aunt, was described as “very old,” and testimony indicated that -she moved “slowly.” When Ray had to take Williams shopping in preparation for Williams’s -move to Ohio, she told Hurst that she “really needed” Hurst to go to the Wal-Mart store with her. The purpose of Hurst’s accompanying’ Ray to the Wal-Mart store was to assist Ray with Williams while they were, in the store shopping, by standing, with. Williams while Ray parked her automobile, and by providing whatever other assistance Ray might have needed with Williams. In fact, Hurst was injured as she got out of the vehicle at Ray’s direction that Hurst stand with Williams in the front ,of the Wal-Mart store while Ray parked the automobile. Hurst’s accompaniment of Ray to the Wal-Mart store to assist Ray with Williams, conferred more than an incidental benefit to Ray—it conferred a material and tangible benefit because. it relieyed Ray, who herself was ill and suffering from congestive heart failure, of some of the burden of having to be the sole caretaker of her elderly aunt on the shopping excursion. It was this benefit to Ray that induced her to ask- Hurst to accompany her to the Wal-Mart store. Sullivan, supra. Accordingly, we conclude that Hurst’s accompanying .Ray to the Wal-Mart store to assist Ray with her elderly aunt conferred, on Ray a material benefit so. as to, remove Hurst from “guest” status under the.Guest Statute.
Conclusion
We reverse the summary judgment entered in favor of the estate and remand the case for- further - proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, Parker, Shaw, Main, Wise, and Bryan, JJ., concur.
Murdock, J., concurs in the result,

. Ray died following the events giving rise to the underlying action and before the complaint was filed.